# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

|  |  |
|---|---|
| HYUNDAI STEEL COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> Defendant, ) <br> ) <br> and, ) <br> ) <br> NUCOR CORPORATION AND UNITED STATES ) <br> STEEL CORPORATION, ) <br> ) <br> Defendant-Intervenors. ) <br> ) | Court No. 20-03799 |

**PLAINTIFF HYUNDAI STEEL COMPANY'S COMMENTS ON THE
U.S. DEPARTMENT OF COMMERCE'S OCTOBER 20, 2021
<u>FINAL REDETERMINATION PURSUANT TO COURT REMAND</u>**

Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Mary S. Hodgins

**MORRIS, MANNING & MARTIN, LLP**
1401 Eye Street, N.W., Suite 600
Washington, D.C. 20005
(202) 408-5153

December 8, 2021                    *Counsel to Plaintiff Hyundai Steel Company*

14013807–1

**TABLE OF CONTENTS**

I.   ARGUMENT ................................................................................................................. 1

    A.   The Issue Of The Countervailability Of Hyundai Steel's Port Usage Rights Is Not Moot. ................................................................................................................. 2

    B.   The *Final Remand Results* Rely On Outdated Cases And Ignore Commerce's Own More Recent Precedents To Find That Hyundai Steel's Port Usage Rights Are Countervailable. ............................................................................................ 5

    C.   Commerce Continues To Mischaracterize The Basis For Hyundai Steel's Port Usage Rights To Determine That They Provide A Benefit To Hyundai Steel. ....... 9

II.  CONCLUSION .......................................................................................................... 12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*AK Steel Corporation v. United States*,
    192 F.3d 1367 (Fed. Cir. 1999)..................................................................5, 6, 7, 9

*Elkem Metals Co. v. United States*,
    27 CIT 1758, 297 F. Supp. 2d 1347 (2003)...........................................................3

*Hylsa, S.A., de C.V. v. United States*,
    31 CIT 52, 469 F. Supp. 2d 1341 (2007)...............................................................3

*Spencer v. Kemna*,
    523 U.S. 1 (1998)...................................................................................................3

*Torrington Co. v. United States*,
    44 F.3d 1572 (Fed. Cir. 1995)...............................................................................3

**Statutes**

19 U.S.C. § 1675(a)(3)(A) ................................................................................................5

**Other Authorities**

*Certain Cold-Rolled Steel Flat Products From the Republic of Korea: Final
    Results of Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg.
    40,465 (Dep't Commerce July 28, 2021)..............................................................4

*Certain Cold-Rolled Steel Flat Products From the Republic of Korea:
    Preliminary Results of Countervailing Duty Administrative Review, 2019*, 86
    Fed. Reg. 55,572 (Dep't Commerce Oct. 6, 2021)...............................................4

*Certain Corrosion-Resistant Steel Products From the Republic of Korea: Final
    Results and Partial Rescission of Countervailing Duty Administrative Review;
    2018*, 86 Fed. Reg. 29,237 (Dep't Commerce June 1, 2021) ...............................4

*Certain Corrosion-Resistant Steel Products From the Republic of Korea:
    Preliminary Results of Countervailing Duty Administrative Review, 2019*, 86
    Fed. Reg. 37,740 (Dep't Commerce July 16, 2021) .............................................4

*Certain Hot-Rolled Steel Flat Products From the Republic of Korea: Final
    Results of Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg.
    47,621 (Dep't Commerce Aug. 26, 2021) .............................................................4

*Certain Hot-Rolled Steel Flat Products From the Republic of Korea: Preliminary Results of Countervailing Duty Administrative Review and Rescission in Part; 2019*, 86 Fed. Reg. 60,797 (Dep't Commerce Nov. 4, 2021) ..................................................... 4

*Large Diameter Welded Pipe From the Republic of Turkey: Final Affirmative Countervailing Duty Determination*, 84 Fed. Reg. 6,367 (Dep't Commerce Feb. 27, 2019) ................................................................................................................ 2

*Final Affirmative Countervailing Duty Determination: Certain Cold-Rolled Carbon Steel Flat Products From the Republic of Korea*, 67 Fed. Reg. 62,102 (Dep't Commerce Oct. 3, 2002) ............................................................................................. 8

*Final Affirmative Countervailing Duty Determination: Stainless Steel Sheet and Strip in Coils From the Republic of Korea*, 64 Fed. Reg. 30,636, (Dep't Commerce June 8, 1999) ................................................................................................ 7, 10, 11

*Final Affirmative Countervailing Duty Determinations and Final Negative Critical Circumstances Determinations: Certain Steel Products from Korea*, 58 Fed. Reg. 37,338, (Dep't Commerce July 9, 1993) .......................................................... 6, 7

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| HYUNDAI STEEL COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> Defendant, ) <br> ) <br> and, ) <br> ) <br> NUCOR CORPORATION AND UNITED STATES ) <br> STEEL CORPORATION, ) <br> ) <br> Defendant-Intervenors. ) <br> ) | Court No. 20-03799 |

**PLAINTIFF HYUNDAI STEEL COMPANY'S COMMENTS ON THE
U.S. DEPARTMENT OF COMMERCE'S OCTOBER 20, 2021
FINAL REDETERMINATION PURSUANT TO COURT REMAND**

On behalf of Plaintiff Hyundai Steel Company ("Hyundai Steel"), we hereby submit comments on the U.S. Department of Commerce's ("Commerce") October 20, 2021 Final Results of Redetermination Pursuant to Court Remand, ECF No. 38 ("*Final Remand Results*").

**I.   ARGUMENT**

Hyundai Steel agrees with and supports Commerce's re-examination of its use of facts available ("FA") and calculation of a *de minimis* subsidy rate for Hyundai Steel in the *Final Remand Results*.  However, Hyundai Steel disagrees with Commerce's continued finding that the Government of Korea's ("GOK") provision of port usage rights to Hyundai Steel at the Port of Incheon Harbor constitutes a countervailable benefit.  *See Final Remand Results* at 11-14.  For the reasons stated in Hyundai Steel's initial brief, this determination is in error and is not

1

supported by substantial evidence or Commerce's own precedents. *See* Pl. Hyundai Steel Co.'s Br. in Supp. of its Mot. for J. on the Agency R. at 26-39 (Mar. 30, 2021), ECF No. 31 ("Hyundai Steel Initial Br."). Since the Department has also offered additional arguments in support of its continued treatment of this program as countervailable, Hyundai Steel is providing these additional comments to address these new points. *See* PR Doc. 301 at 29-32. As discussed herein, while Hyundai Steel supports Commerce's *Final Remand Results* on the issue of the application of FA, this Court should reject Commerce's additional justifications for finding that the provision of port usage rights provides a countervailable benefit to Hyundai Steel.

      **A.    The Issue Of The Countervailability Of Hyundai Steel's Port Usage Rights Is Not Moot.**

Commerce argues that Hyundai Steel's arguments against the countervailability of the port usage rights program is "moot" in this case because Commerce calculated a total *ad valorem* subsidy rate that is *de minimis* and therefore "the end result of {Commerce's} conclusion on remand is essentially the same." *Final Remand Results* at 11. However, even without the application of FA, Commerce still found that the program provided Hyundai Steel a *measurable* benefit of 0.01 percent during the period of review ("POR") and therefore Commerce continues to make the determination that the provision of port usage rights is countervailable. *See id.* at 5; *see also Large Diameter Welded Pipe From the Republic of Turkey: Final Affirmative Countervailing Duty Determination*, 84 Fed. Reg. 6,367 (Dep't Commerce Feb. 27, 2019), and accompanying Issues and Decision Memorandum at 5-6 & n.7 (stating that it is Commerce's practice not to make a determination on countervailability where there is no measurable benefit and thus such a determination is "unnecessary"). This issue is thus not moot as Commerce's determination that Hyundai Steel's port usage rights are countervailable has a direct impact on this case, as well as other past and future cases.

Furthermore, the well-recognized "capable of repetition, yet evading review" exception to mootness clearly applies to this case. To meet this exception to mootness, litigants must satisfy two conditions: (1) that "the challenged action {is} in its duration too short to be fully litigated prior to cessation or expiration;" and (2) that "there {is} a reasonable expectation that the same complaining party {will} be subject to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (alterations in original) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990)). The Court of Appeals for the Federal Circuit ("Federal Circuit") has held that "litigation cannot keep pace with the rate of administrative review," and thus full adjudication of the issues arising out of one review may have necessary implications for subsequent reviews. *Torrington Co. v. United States*, 44 F.3d 1572, 1578 (Fed. Cir. 1995). Even in cases where Commerce has asserted that the legal issue is moot because the relief requested "would have no practical effect upon the outcome of the administrative review," this court has held that full adjudication is appropriate so that Commerce does not simply "avoid responding to plaintiffs' arguments on the merits." *Elkem Metals Co. v. United States*, 27 CIT 1758, 1758-59, 1762, 297 F. Supp. 2d 1347, 1348, 1351 (2003); *see also Hylsa, S.A., de C.V. v. United States*, 31 CIT 52, 56-57, 469 F. Supp. 2d 1341, 1345-46 (2007) (recognizing that there may be "collateral consequences" to mootness in civil cases that may support an exception "if retaining the status quo may have legal effect on subsequent proceedings"). Taken together, these cases support the proposition that the "capable of repetition, yet evading review" exception to mootness applies when resolution of the issues will have legal consequences to Commerce's actions in subsequent reviews, which is exactly the case here.

Since Hyundai Steel commenced this action, Commerce has issued final results in three administrative reviews in which it countervailed Hyundai Steel's port usage rights and, in each of those cases, Commerce has cited to its decision in the *Final Results* for support. *See Certain Corrosion-Resistant Steel Products From the Republic of Korea: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg. 29,237 (Dep't Commerce June 1, 2021), and accompanying Issues and Decision Memorandum at Comment 2; *Certain Cold-Rolled Steel Flat Products From the Republic of Korea: Final Results of Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg. 40,465 (Dep't Commerce July 28, 2021), and accompanying Issues and Decision Memorandum at Comment 2; *Certain Hot-Rolled Steel Flat Products From the Republic of Korea: Final Results of Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg. 47,621 (Dep't Commerce Aug. 26, 2021), and accompanying Issues and Decision Memorandum at Comment 2. In each of these cases, Commerce's decision to countervail the port usage rights program resulted in a measurable benefit and contributed to an above *de minimis* total subsidy rate for Hyundai Steel.

In addition, Commerce has also issued preliminary results in three additional administrative reviews in which it continues to countervail the port usage rights program on the same bases. *See Certain Corrosion-Resistant Steel Products From the Republic of Korea: Preliminary Results of Countervailing Duty Administrative Review, 2019*, 86 Fed. Reg. 37,740 (Dep't Commerce July 16, 2021), and accompanying Decision Memorandum at 26-28; *Certain Cold-Rolled Steel Flat Products From the Republic of Korea: Preliminary Results of Countervailing Duty Administrative Review, 2019*, 86 Fed. Reg. 55,572 (Dep't Commerce Oct. 6, 2021), and accompanying Decision Memorandum at 25-27; *Certain Hot-Rolled Steel Flat Products From the Republic of Korea: Preliminary Results of Countervailing Duty*

*Administrative Review and Rescission in Part; 2019*, 86 Fed. Reg. 60,797 (Dep't Commerce Nov. 4, 2021), and accompanying Decision Memorandum at 15-17.  Most, if not all, of these administrative reviews are likely to be completed before the final resolution of this case.  *See* 19 U.S.C. § 1675(a)(3)(A) (setting time limits for issuing final results in administrative reviews).

As Commerce's decisions in these previous and subsequent proceedings make clear, Commerce continues to rely on legally unsupportable grounds for finding that Hyundai Steel's port usage rights provide a countervailable benefit, and will likely continue to do so repeatedly until this Court decides the issue.  By not addressing the issue of countervailability in this appeal, the Court would maintain the status quo to Hyundai Steel's detriment, and allow Commerce to avoid judicial scrutiny under the guise of mootness.  The Court should therefore take the opportunity to decide the countervailability issue in this appeal.  For the reasons explained in Hyundai Steel's initial brief and further explained below, the Court should find that Commerce's treatment of the port usage rights program as countervailable is not supported by substantial evidence and is otherwise not in accordance with law.

      **B.**      **The *Final Remand Results* Rely On Outdated Cases And Ignore Commerce's Own More Recent Precedents To Find That Hyundai Steel's Port Usage Rights Are Countervailable.**

Commerce relies on the Federal Circuit's ruling in *AK Steel Corporation v. United States*, 192 F.3d 1367, 1379 (Fed. Cir. 1999) to support its treatment of the port usage rights program as countervailable but in doing so ignores its own precedents that came *after* the Federal Circuit's decision.  Specifically, Commerce states that its treatment of Hyundai Steel's port usage rights "is consistent with {its} treatment of a similar program in *AK Steel*, where Commerce determined that a countervailable benefit was conferred on POSCO by the exemption from dockyard fees." *Final Remand Results* at 13.  Commerce states that even if it viewed the exemptions received by POSCO as repayment for POSCO's costs of constructing the berths, it

5

still would have found the exemptions countervailable and, thus, Hyundai Steel's port usage rights are similarly countervailable.  *Id.*  However, Commerce's discussion of this case fails to mention the critical differences between the program at issue in *AK Steel* and Hyundai Steel's construction of the port at Incheon Harbor under the Harbor Act.  Commerce also fails to mention that it has specifically reviewed reimbursements for the construction of ports under the Harbor Act and has consistently applied a different standard when analyzing these reimbursements than it applied to POSCO in the case underlying *AK Steel*.  Accordingly, *AK Steel* is inapposite and should not be viewed as controlling in this case.

The program at issue in *AK Steel* was the Kwangyang Bay Industrial Estate ("KBIE"), which Commerce determined provided two distinct subsidies to industrial users such as POSCO: the direct provision of infrastructure and the exemption of dockyard fees.  *Final Affirmative Countervailing Duty Determinations and Final Negative Critical Circumstances Determinations:  Certain Steel Products from Korea*, 58 Fed. Reg. 37,338, 37,346-48 (Dep't Commerce July 9, 1993) ("*Steel Products from Korea*").  According to Commerce, POSCO's construction of its Kwangyang Steel Works site "caused a shortage of industrial water," leading the GOK to fund "construction and improvements of the waterway" in Kwangyang Bay, which primarily benefitted POSCO.  *Id.* at 37,347.  As part of this effort, POSCO built fifteen port berths and received exemptions from dockyard fees.  *Id.* at 37,347-48.  Commerce concluded that these exemptions were countervailable because "POSCO built the berths for its own benefit" and, even if the GOK had built the port berths, Commerce would have countervailed the construction funding as a direct provision of infrastructure.  *Id.*

In analyzing Commerce's determination in *Steel Products from Korea*, the Federal Circuit noted that "Commerce determined that the Korean government limited access to the KBIE, {and} that POSCO was the primary user of the infrastructure at the KBIE." *AK Steel*, 192 F.3d at 1379.  The Federal Circuit further noted Commerce determined that the exemption of dockyard fees for POSCO was a countervailable benefit because "POSCO received a benefit not accorded {to} any other company at the KBIE."  *Id.*  Under this framework, the Federal Circuit determined that Commerce's determination that POSCO's dockyard fee exemptions were countervailable was supported by substantial evidence.  *Id.* at 1382.

While this case was before the Federal Circuit, Commerce was conducting another investigation of POSCO in a separate case.  In that case, Commerce analyzed the port facilities that POSCO had constructed at Kwangyang Bay *outside* of the KBIE program.  Specifically, Commerce determined that since the KBIE program, POSCO had built numerous port facilities at Kwangyang Bay, but title to these port facilities had to be transferred to the GOK under the Harbor Act.  *Final Affirmative Countervailing Duty Determination:  Stainless Steel Sheet and Strip in Coils From the Republic of Korea*, 64 Fed. Reg. 30,636, 30,649 (Dep't Commerce June 8, 1999).  Unlike the KBIE program, Commerce determined that under the Harbor Act, "any company within any industrial sector is eligible to construct infrastructure necessary for the operation of its business provided that it receive approval" from the GOK to build the facility.  *Id.*  Commerce determined that, by law, ownership of such facilities must be reverted to the GOK and, by law, the company that builds the facility then "has the right to free usage of that facility and the ability to collect fees from other users of the facility."  *Id.*  Every company that must revert the facility that it built is granted this right and this right only extends until the company "recaptures its cost of constructing the facility."  *Id.*  Commerce further verified that a

7

"diverse grouping of private sector companies across a broad range of industrial sectors" received this type of treatment and that each company only received these rights until they fully recouped their costs of construction. *Id.* Accordingly, Commerce determined that the provision of these port usage rights under the Harbor Act was *not* countervailable. *Id.*

A few years later, Commerce distinguished its decision to countervail the dockyard fee exemptions in *Certain Steel Products* from its decision not to countervail the port usage rights in *Stainless Steel Sheet and Strip* by developing the "excessive benefit" standard. In the *Final Affirmative Countervailing Duty Determination: Certain Cold-Rolled Carbon Steel Flat Products From the Republic of Korea*, 67 Fed. Reg. 62,102 (Dep't Commerce Oct. 3, 2002), and accompanying Issues and Decision Memorandum ("*CR from Korea 2000*") at Comment 11, Commerce recognized its different determinations under the KBIE program in *Certain Steel Products* and under the Harbor Act in *Stainless Steel Sheet and Strip*. While Dongbu Steel Co., Ltd.'s ("Dongbu") exemptions were received under the Harbor Act, Commerce determined that Dongbu's "excessive exemption period" of 70 years made its exemption countervailable because such a long exemption period was specific to Dongbu and was longer than the actual useful life and depreciation period of the assets that Dongbu constructed. *Id.* In other words, Dongbu's exemption period allowed it to receive benefits *beyond* those necessary to recoup its costs for constructing the port. As fully explained in Hyundai Steel's initial brief, Commerce has applied this "excessive benefit" standard in every case in which port usage rights are provided because title of the constructed facility was reverted to the GOK by law under the Harbor Act. *See* Hyundai Steel Initial Br. at 29-31.

8

In the *Final Results*, as well as in the *Final Remand Results*, Commerce fails to acknowledge the standard it established in these precedents and fails to explain how Hyundai Steel's port usage rights are excessive under this framework. By citing only to *AK Steel* and by failing to explain the context of that decision, Commerce leapfrogs years of much more recent precedent that specifically examine port usage rights under the Harbor Act. When the history of this program is examined in its entirety, it becomes clear that *AK Steel* is inapposite and not controlling in this case.

> C. **Commerce Continues To Mischaracterize The Basis For Hyundai Steel's Port Usage Rights To Determine That They Provide A Benefit To Hyundai Steel.**

In the *Final Remand Results*, Commerce asserts that the "main purpose" of Hyundai Steel constructing the port at Incheon Harbor was not "for public good or any governmental function," but rather for Hyundai Steel's own use. *Final Remand Results* at 12. This echoes Commerce's characterization in the *Final Results*, in which it claimed that "{t}he essence of {the port usage rights} program is that the GOK helped Hyundai Steel build a port for its own use for a very long time." PR Doc.[1] 301 at 30. This characterization leads Commerce to conclude that there is no "difference in substance between the program at issue and a program in which a government directly provides funding to a company to build a port for the company's benefit." *Final Remand Results* at 12. In so doing, Commerce misconstrues the nature of Hyundai Steel's construction of the port at Incheon Harbor and its port usage rights as demonstrated by the facts on the record.

---

[1] Citations to the administrative record shall be to the public or confidential record document number ("PR Doc." or "CR Doc.") followed by the page or exhibit number. Citations to the remand administrative record shall be to the public or confidential record document number ("Remand PR Doc." or "Remand CR Doc.") followed by the page or exhibit number.

First of all, even under Commerce's characterization, Commerce's analysis fails because it does not apply the excessive benefit framework described above. In *Stainless Steel Sheet and Strip*, Commerce explicitly stated that port usage rights received as a result of the requirements of the Harbor Act are generally not countervailable even if a company constructs a harbor facility for its own use. 64 Fed. Reg. at 30,649 ("{U}nder the Harbor Act, any company within any industrial sector is eligible to construct infrastructure *necessary for the operation of its business* provided that it receives approval by the Administrator of the Maritime and Port Authority to build the facility.") (emphasis added). As Commerce explained, this is because the GOK "does not have sufficient funds to construct all of the infrastructure a company may need to operate its business" and thus the GOK allows private entities to construct certain types of infrastructure that they are not legally allowed to own. *Id.* Thus, even if Hyundai Steel built the port at Incheon Harbor solely for its own use, this fact alone does not excuse abandoning the excessive benefit analysis that Commerce has established through its precedents. *See* Hyundai Steel Initial Br. at 29-31. Indeed, when looking at the facts of this case, it is clear that Hyundai Steel's construction of the port served the purpose of relieving the GOK from the burden of incurring infrastructure costs as stated in *Stainless Steel Sheet and Strip*.

As the GOK stated, construction of the port at North Incheon Harbor arose "in order to relieve congestion and reduce the concentration of pollution at the existing port facilities of Incheon Harbor." PR Docs. 243-245 at 93. Under Hyundai Steel's agreement with the GOK, the GOK incurred no direct expenses in relation to the construction of the port facility, CR Docs. 62-119 (PR Docs. 82-109) at 59, while the total construction costs incurred by Hyundai Steel was 62,147 million KRW, CR Docs. 275-283 (PR Docs. 208-209) at Exhibit NSA-5. Once Hyundai Steel completed construction of the port, it reverted the port to the GOK and in

exchange received port usage rights based on a reimbursement schedule that Hyundai Steel and the GOK agreed would be necessary only to the extent that Hyundai Steel could recover its costs. *See* CR Docs. 275-283 (PR Docs. 208-209) at 2 & Exhibits NSA-1, 2, & 4; *see also* CR Docs. 301-302 (PR Doc. 246) at 1-3 (explaining the calculation of the reimbursement schedule). Thus, like in *Stainless Steel Sheet and Strip*, the GOK ensured that Hyundai Steel "can only receive free usage of {its} facility up to the monetary amount approved by the {GOK}." 64 Fed. Reg. at 30,649. This period, which was calculated to be 41 years and 8 months, or up to and including 2047, is shorter than any of the periods that Commerce has previously determined were "excessive." *See* Hyundai Steel Initial Br. at 29-31 (describing 70 and 50 year periods Commerce has found excessive in prior cases). At no point in the *Final Remand Results*, nor in the *Final Results*, does Commerce even attempt to explain why Hyundai Steel's port usage rights period of 41 years and 8 months might be excessive.

Furthermore, by stating that there is no "difference in substance between the program at issue and a program in which a government directly provides funding to a company to build a port for the company's benefit", *Final Remand Results* at 12, Commerce ignores the financial implications of reversion of ownership to the GOK. Specifically, Hyundai Steel and other companies that construct harbor facilities under this program must first incur the cost on their own and then do not get the usual benefit of owning the asset on its books. The port built by Hyundai Steel has value and Hyundai Steel will never be able to sell that asset in the future for remuneration because it had to revert ownership to the GOK. This is a significant difference between the GOK providing funds to construct the port directly for Hyundai Steel and Hyundai Steel building the port, reverting ownership to the GOK, and receiving port usage rights for a discrete period of time to recoup construction costs.

Accordingly, and for the reasons stated in Hyundai Steel's initial brief, incorporated here by reference, the Court should reject Commerce's characterization of Hyundai Steel's port usage rights and find that Commerce's determination that the port usage rights provide a countervailable benefit is unsupported by substantial evidence and contrary to law.

## II.   CONCLUSION

Based on the foregoing, Hyundai Steel respectfully requests that this Court (i) hold that Commerce's *Final Remand Results* are unsupported by substantial evidence and otherwise not in accordance with the law insofar as they treat the Incheon Port Usage program as countervailable; (ii) remand the case to Commerce with instructions to correct the errors identified by the Court; and (iii) for such other relief that the Court deems just and proper. Alternatively, if the Court finds that Commerce's decision that the Incheon port program is countervailable, is supported by substantial evidence and otherwise in accordance with law, hold that Commerce's decision in the *Final Remand Results* to recalculate Hyundai Steel's margin on record information and not facts available is also supported by substantial evidence and is otherwise in accordance with law.

Respectfully submitted,

/s/ Brady W. Mills
Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Mary S. Hodgins

**MORRIS, MANNING & MARTIN, LLP**
1401 Eye Street, N.W., Suite 600
Washington, D.C. 20005
(202) 408-5153

*Counsel to Plaintiff Hyundai Steel Company*

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 3,505 words including text, footnotes, and headings and excluding the table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word 2016 used to prepare this brief.

<b>/s/ Brady W. Mills</b>