UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| HYUNDAI STEEL COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>        Defendant,<br><br>    and<br><br>NUCOR CORPORATION and UNITED STATES STEEL CORPORATION,<br><br>        Defendant-Intervenors. | Court No. 20-03799 |

**DEFENDANT'S RESPONSE IN SUPPORT
OF THE REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to the comments of Hyundai Steel Company (Hyundai Steel), ECF No. 40 (Hyundai Steel's Comments), and the comments of Nucor Corporation (Nucor), ECF Nos. 41 and 43 (Nucor's Comments), concerning the United States Department of Commerce's final results of redetermination filed in accordance with this Court's decision and remand order in *Hyundai Steel Company v United States*, 532 F.Supp.3d 1397 (Ct. Int'l Trade 2021). *See* Final Results of Redetermination Pursuant to Court Remand, Oct. 20, 2021 (remand results), ECF No. 38-1 (Remand P.R. 9).[1] For the reasons

---

[1] Citations to the public record "P.R. _" and confidential record "C.R._" refer to the administrative review record. Citations to "Remand P.R._" and "Remand C.R._" refer to the public and confidential record of the remand redetermination, respectively.

explained below, we respectfully request that the Court sustain Commerce's remand results and enter judgment for the United States.

## BACKGROUND

I. <u>Commerce's Final Results</u>

On December 11, 2018, Commerce initiated an administrative review of the CVD order on certain hot-rolled steel flat products (HR steel) from the Republic of Korea covering the period January 1, 2017, through December 31, 2017. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 83 Fed. Reg. 63,615 (Dep't of Commerce Dec. 11, 2018) (initiation notice). Commerce selected Hyundai Steel for individual review as a mandatory respondent. *See Certain Hot-Rolled Steel Flat Products from the Republic of Korea: Preliminary Results of Countervailing Duty Administrative Review, 2017*, 84 Fed. Reg. 67,927 (Dep't of Commerce Dec. 12, 2019) (Preliminary Results) (P.R. 255), and accompanying Preliminary Decision Memorandum (PDM) (P.R. 252) at 2. On December 12, 2019, Commerce published the preliminary results. *See id*.

Hyundai Steel reported receiving benefits from the provision of port usage rights at the Port of Incheon program through the receipt of berthing income. *See* PDM at 17. However, Commerce preliminarily determined that the net subsidy rate for this program was not measurable. *Id.*

In administrative case briefs, Nucor and United States Steel Corporation (U.S. Steel) argued that Commerce should factor "other" income into Hyundai Steel's benefit calculation for the provision of port usage rights at the Port of Incheon program. *See Certain Hot-Rolled Steel Flat Products From the Republic of Korea: Final Results of Countervailing Duty Administrative Review, 2017*, 85 Fed. Reg. 64,122 (Dep't of Commerce Oct. 9, 2020) (Final Results) (P.R. 311),

and accompanying Issues and Decision Memorandum (IDM) (P.R. 301) at 29 (citing Petitioners' Case Brief at 4 (P.R. 273; C.R. 320)). Hyundai Steel rebutted that there is no basis to apply facts available to calculate a benefit for the other income in the benefit calculation. IDM at 28; *see also* Hyundai Steel Rebuttal Brief at 3, 9 (P.R. 278; C.R. 321). In the final results, Commerce, after examining information on the record, found Hyundai Steel received additional benefits related to "other" income that it was entitled to receive in connection with its own usage of the port. IDM at 29. Commerce found that Hyundai Steel received a financial contribution because these fees represented revenue forgone within the meaning of 19 U.S.C. § 1677(5)(D)(ii). *Id.*

Because necessary information was not available on the record with respect to the "other" income, Commerce calculated the benefit with respect to these fees based on facts available. *Id.* at 30. As facts available, Commerce measured the benefit using the fees reported by Hyundai Steel and applied those rates to the volume of cargo Hyundai Steel reported during the period of review. *Id.* Commerce then added this benefit to the 2017 berthing income reported by Hyundai Steel, and divided the result by Hyundai Steel's total sales, resulting in a net subsidy rate of 0.06 percent *ad valorem* for the program. Final Calculation Memo at 4 (P.R. 302; C.R. 324). Commerce calculated a final subsidy rate for Hyundai Steel of 0.51 percent. *See* Final Results, 85 Fed. Reg. at 64,123.

II. Court's Remand Order

Hyundai Steel challenged Commerce's final results with respect to the provision of port usage rights at the Port of Incheon program. *See* Hyundai Steel's Motion, ECF No. 31. Commerce subsequently requested that the Court remand the matter to Commerce for further administrative proceedings. *See* Defendant's Motion, ECF No. 33. On August 27, 2021, the

Court granted our motion and remanded the final results for reconsideration. *See Hyundai Steel Co.*, 532 F. Supp. 3d at 1400. The Court held that a remand would allow Commerce to cure its own mistakes and reconsider the substantive issues raised by plaintiff, as well as preserve Court resources. *Id.*

III.    Remand Results

On remand, Commerce reconsidered its application of facts available to calculate the benefit Hyundai Steel received related to the harbor exclusive usage fee(s). *See* Remand Results at 5. Commerce issued a supplemental questionnaire to Hyundai Steel, identifying the deficiencies regarding the missing information necessary to determine the amount of benefit Hyundai Steel received related to the harbor exclusive usage fee(s). *See* Remand Results at 3 and 5 (citing Supplemental Questionnaire, dated August 30, 2021 (Remand P.R. 1; Remand C.R. 1)). Using the additional data Hyundai Steel provided in its supplemental questionnaire response, Commerce recalculated the benefit Hyundai Steel received from the provision of port usage right at the Port of Incheon program. *See* Remand Results at 5; *see also* Hyundai Steel's Remand Supplemental Questionnaire Response, dated September 7, 2021 (Hyundai Steel Sept. 2, 2021 SQR) (Remand P.R. 4; Remand C.R. 2-4).

Accordingly, Commerce determined that there was no longer a need to apply facts otherwise available in determining the benefit received by Hyundai Steel from this program. Remand Results at 5. Instead, Commerce used Hyundai Steel's supplemental response to recalculate the *ad valorem* rate of the port usage rights at the Port of Incheon program. *Id.* As a result, the revised program rate is 0.01 percent *ad valorem* and the net countervailable subsidy rate for Hyundai Steel for the period of review is 0.46 percent. *Id.* Because this rate is less than 0.50 percent, Commerce will disregard it as *de minimis*. *Id.* (citing 19 C.F.R. § 351.106(c)(1)).

ARGUMENT

I.   Standard Of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence may be "less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1996).

II.   Commerce's Remand Results Comply With The Remand Order

Commerce has complied with the Court's remand order by reconsidering its determination regarding application of facts available and the rate assigned to Hyundai Steel. *Hyundai Steel Co.*, 532 F. Supp. 3d at 1400. Hyundai Steel, in its comments, supports Commerce's decision to no longer apply facts available, but challenges Commerce's justifications for finding that program to be countervailable. Hyundai Steel's Comments at 2. Nucor argues that use of facts available was initially lawful and is still warranted to calculate the benefit received by Hyundai Steel. Nucor's Comments at 1. As we explain below, this Court should sustain Commerce's remand results as lawful and supported by substantial evidence.

   A.   Commerce's Determination Not To Apply Facts Available To Calculate The Benefit Is Lawful And Supported By Substantial Evidence

Consistent with the Court's order, Commerce reconsidered its application of facts available, and the rate assigned to Hyundai Steel. On remand, Commerce issued a supplemental

questionnaire to Hyundai Steel identifying the deficiencies regarding the missing information necessary to determine the amount of benefit conferred from the provision of port usage rights at the Port of Incheon program, as it relates to harbor exclusive fees, as required under section 19 U.S.C. § 1677m(d). Remand Results at 5. Hyundai Steel provided the necessary information in response. Because the information necessary to calculate the benefit under the program at issue is now on the record, Commerce determined that application of facts available is no longer necessary. *Id.* at 8.

Nucor argues that use of facts available is warranted and required. Nucor's Comments at 1-3. Nucor insists that Commerce received incomplete information from Hyundai Steel during the remand segment of the proceeding, and thus the respondent failed to substantiate the figures it provided with any documentation or other support. *Id.* at 1-2. However, as Commerce explained in the final calculation memo, Hyundai Steel received a benefit related to harbor exclusive usage fees during the period of review from its own importations because of Hyundai Steel's arrangement with the government of Korea to operate the port. *See* Final Calculation Memo at 3 (P.R. 302; C.R. 324). To calculate this benefit, on remand, Commerce requested Hyundai Steel provide a description of the harbor exclusive usage fees(s) that Hyundai Steel could have collected during the period of review, and to provide detailed calculations and any supporting documentation for the harbor exclusive usage fees that Hyundai Steel could have collected. *See* Remand Supplemental Questionnaire at 1 (Remand P.R. 1; Remand C.R. 1). In its response, Hyundai Steel provided calculations for and descriptions of the three types of exclusive usage fees that it could have charged during the period of review. Hyundai Steel Sept. 2, 2021 SQR at 3-6, and Exhibits REM-1- REM-8 (Remand P.R. 4; Remand C.R. 2-4).

Specifically, Hyundai Steel provided the information requested as it related to apron usage fees (quay wall lease fees), land usage fees, and open storage yard fees. *See id.*

Thus, the information necessary to calculate Hyundai Steel's benefit for the Port of Incheon program is now on the record, and no rationale provided by Nucor otherwise supports ignoring such information for continued application of facts available. Remand Results at 8. Commerce found that Hyundai Steel provided the necessary estimation of the other fees it could have collected under this program and documentation to support the fee rates. *Id.* at 10 (citing Hyundai Steel Sept. 2, 2021 SQR) (Remand P.R. 4; Remand C.R. 2-4). Moreover, Commerce determined that the calculations provided by Hyundai Steel were adequately supported and that nothing on the record contradicts the calculations provided. *Id.* Commerce emphasized that Hyundai Steel answered Commerce's questions in the manner requested. *Id.* at 10.

As such, Commerce's determination to calculate the benefit for the program at issue without the use of facts available and rely on Hyundai Steel's information on the record is supported by substantial evidence and in accordance with law.

> B. Commerce's Determination To Countervail the Port of Incheon Program Is Lawful And Supported By Substantial Evidence And Hyundai Steel's Arguments to the Contrary Lack Standing

Although Hyundai Steel supports Commerce's reconsideration of the use of facts available and calculation of a *de minimis* rate, it argues that the Court should reject Commerce's treatment of the Port of Incheon program as countervailable and remand the case back to Commerce. Hyundai Steel's Comments at 1 and 12.

As an initial matter, any decision by the Court on whether the program is countervailable would be advisory. Commerce calculated a *de minimis* rate and the countervailability of the program at issue would not change the rate; it would remain *de minimis*, and Hyundai Steel would continue not to have duty obligations under this review. However, should the Court reach

7

the issue of countervailability of the Port of Incheon program, Commerce's explanation for why the Port of Incheon program provides a countervailable benefit to Hyundai Steel is lawful and supported by substantial evidence.

        1.      Because Hyundai Steel Prevailed, There Is No "Case Or Controversy" For The Court's Consideration

Because Hyundai received a *de minimis* rate (which, by regulation, Commerce will disregard), Hyundai Steel has prevailed in these proceedings, and it is not necessary for the Court to address its arguments that the Port of Incheon program does not provide a countervailable benefit. When a respondent challenges an administrative proceeding in which it has prevailed, there is no case or controversy within the Court's jurisdiction. *See Zhanjiang Guolian Aquatic Prod. Co. v. United States*, 991 F. Supp. 2d 1339, 1342 (Ct. Int'l Trade 2014) (citing *Royal Thai Government v. United States*, 978 F. Supp. 2d 1333, 1333(Ct. Int'l Trade 2014)) (dismissing matter for lack of jurisdiction where plaintiff prevailed in proceedings before the International Trade Commission because "jurisdiction of federal courts is constitutionally limited to actions that involve actual cases or controversies."); *see also Freeport Minerals Co. v. United States*, 758 F.2d 629, 634 (Fed. Cir. 1985) ("As a general rule, the prevailing party in a proceeding may not appeal the proceeding just because he disagrees with some of the findings or reasoning.")

Hyundai Steel has already secured the maximum possible relief through calculation of a *de minimis* rate. To remand again for reconsideration of whether the program is countervailable would expend unnecessary Government time and resources, not to mention the resources of this Court in reviewing Commerce's remand redetermination. *See Roses Inc. v. United States*, 774 F. Supp. 1376, 1381 (Ct. Int'l Trade 1991); *see also Borusan Mannesmann Boru Sanayi Ve Ticaret A.S., v. United States*, Court No. 19-00056, Slip Op. 21-174 at 8 (Ct. Int'l Trade Dec. 28, 2021). Moreover, Hyundai Steel's disagreement with Commerce's determination to countervail the Port

of Incheon program does not alter the fact that it is not injured by Commerce's remand results. *See PAO Severstal v. United States*, 219 F. Supp. 3d 1411, 1414-1415 (Ct. Int'l Trade 2017) (explaining that "to establish standing, the plaintiff must show an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent, not conjectural or hypothetical.'") (internal citations omitted). And, as each administrative review stands on its own, Commerce's determination in this proceeding has no bearing on future administrative reviews. *See Jiaxing Bro. Fastener Co. v. United States*, 822 F.3d 1289, 1299 (Fed. Cir. 2016).

As Commerce explained in the remand results, it calculated an overall subsidy rate for Hyundai Steel that is *de minimis*, and if sustained, Commerce would instruct U.S. Customs and Border Protection to liquidate Hyundai Steel's entries for the period of review without regard to countervailing duties. Remand Results at 11. Hyundai Steel is in favor of Commerce's calculation of a *de minimis* subsidy rate. Hyundai Steel's Comments at 1. Notwithstanding this, Hyundai Steel urges the Court to consider the countervailability of its port usage rights, on the theory that its alleged injury is "capable of repetition, yet evading review." *Id.* at 3-4 (citing administrative proceedings in which Commerce similarly countervails the same program and calculated an above *de minimis* total subsidy rate.) This argument is unconvincing and contradictory.

First, Hyundai Steel ignores that fact that – to the extent Commerce makes a similar finding in other administrative reviews – the countervailability of the port usage rights can be challenged *in those proceedings*, assuming a non-*de minimis* rate is calculated. Indeed, Hyundai Steel has *already* challenged this issue in an appeal from a subsequent administrative review. *See Hyundai Steel Co. v. United States*, Court No. 21-00536 (Ct. Int'l Trade filed Sept. 22, 2021) (appealing *Certain Hot-Rolled Steel Flat Products From the Republic of Korea: Final Results of*

9

*Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg. 47,621 (Dep't of Commerce Aug. 26, 2021)). The available avenue for relief is for Hyundai Steel to appeal Commerce's determinations in those cases in which it has actually been injured, *i.e.*, received an above *de minimis* subsidy. Hyundai Steel's argument that Commerce will avoid judicial scrutiny if the Court does not consider it in this proceeding is meritless.

It is well-settled that a prevailing party may not appeal an administrative determination merely because it disagrees with some of the findings or reasoning. *See PAO Severstal*, 219 F. Supp. 3d at 1415. More recently, this Court also found it was not necessary for the Court to address a date-of sale-argument because the party had already secured the maximum possible relief when the margin rate was already *de minimis*. *See Borusan Mannesmann Boru Sanayi Ve Ticaret A.S.*, Court No. 19-00056, Slip Op. 21-174 at 8. The rationale of the decision in *PAO Severstal* is even more applicable to this case, because Hyundai Steel does not present *any* possible hypothetical in which it would be required to pay countervailing duties for this period of review should the Court sustain the remand results. Regardless of whether or not the Court found the program should be countervailable, the rate would remain *de minimis*. Because Hyundai Steel has received the maximum possible relief, and cannot identify any remaining "case or controversy" between the parties, we respectfully request that this Court sustain Commerce's remand results without considering this issue.

    2.  <u>Commerce Lawfully Countervailed The Port Of Incheon Program</u>

Nonetheless, should the Court decide to address the merits of the countervailability issue, it should find that Commerce's determination to countervail the Port of Incheon program is lawful and supported by substantial evidence. Hyundai Steel muddies the waters with conclusory statements as to why the Federal Circuit's ruling in *AK Steel* is inapplicable and does

not support Commerce's treatment of the Port of Incheon program. Hyundai Steel's Comments 5-9 (citing *AK Steel Corp. v. United States*, 192 F.3d 1367 (Fed. Cir. 1999)). In *AK Steel*, the Federal Circuit sustained Commerce's determination to countervail respondent POSCO's exemption from dockyard fees, or user fees, which the government of Korea would normally charge for the use of 15 berths in the Kwangyang Bay Industrial Estate (KBIE) port facility. *See Final Affirmative Countervailing Duty Determinations and Final Negative Critical Circumstances Determinations: Certain Steel Products from Korea*, 58 Fed. Reg. 37,338, 37,347-348 (Dep't of Commerce July 9, 1993) (*Steel Products from Korea*); *see also AK Steel*, 192 F.3d at 1382. The program also gave POSCO the right to collect fees up to the amount of the investment, and, as reported by POSCO and the government of Korea, POSCO was the only company located in the KBIE that did not pay dockyard fees for the use of the berths. *Id.* Like Hyundai Steel, POSCO claimed that its exemption from dockyard fees was a reimbursement for expenses POSCO incurred to build the berths. *See id.* Commerce explained, and the Federal Circuit agreed, that because the privilege was limited to POSCO and because the privilege relieves the company of costs it would otherwise have to pay absent the privilege, it constituted a countervailable benefit. *Id.*; *see also AK Steel*, 192 F.3d at 1382.

Hyundai Steel attempts to shift focus to the period for which Hyundai Steel was granted its exemptions in this case. Hyundai Steel's Comments at 5-9. Although Hyundai Steel attempts to draw a comparison to Commerce's decision in *CR from Korea Inv.*, that case is distinguishable from Commerce's determination here because the exemption period granted to Dongbu in that case was relevant with regard to the finding of *specificity*, not benefit. *Final Affirmative Countervailing Duty Determination: Certain Cold-Rolled Carbon Steel Flat Products From the Republic of Korea*, 67 Fed. Reg. 62,102 (Dep't of Commerce Oct. 3, 2002),

and accompanying Issues and Decision Memorandum at Comment 11 (*CR from Korea Inv.*). In this review, Commerce's specificity determination was based on adverse facts available due to the government of Korea's failure to cooperate by not acting to the best of its ability to comply with Commerce's request for information. *See* IDM at 5-6 (P.R. 301). Moreover, neither Commerce nor the *AK Steel* court stipulated that any amount of time less than 70 years or closely resembling the amount of time in the present case was the basis for a finding against countervailability. Nor does Hyundai Steel cite any subsequent authority that overturns the Federal Circuit's decision in *AK Steel*.

To the contrary, as Hyundai Steel recognizes, the Federal Circuit in *AK Steel* sustained Commerce's determination to countervail the exemption provided under a similar program because Commerce determined that POSCO received a benefit not accorded to any other company at the KBIE and thus the exemption of fees was deemed a countervailable benefit. Hyundai Steel at 7 (citing *AK Steel Corp. v. United States*, 192 F.3d at 1379). Commerce previously explained that "even if we viewed the non-payment of dockyard fees as repayment by the government for POSCO's assumption of the costs of constructing the berths, we would still find the exemption to be countervailable." Remand Results at 13 (citing *Steel Products from Korea*, 58 Fed. Reg. at 37,338, and accompanying IDM at 16. As Commerce explained, if the government of Korea had built the port berths, instead of POSCO, Commerce would have "countervailed the construction funding as a specific infrastructure benefit." *See AK Steel*, 192 F.3d at 1382. Commerce's treatment of the Port of Incheon program here is consistent with *AK Steel*. Remand Results at 13 (citing *AK Steel,* 192 F.3d at 1379).

Hyundai Steel makes the same arguments now that Commerce rejected in *AK Steel* – that the exemption was merely a reimbursement by the government of Korea for the costs incurred in

12

constructing the port. Remand Results at 13; *see* Hyundai Steel's Comments at 11; *see also AK Steel*, 192 F.3d at 1379. Although Hyundai Steel claims that it is merely recouping construction costs, it does not follow that the "provision" of such payments are not a countervailable benefit to Hyundai Steel. Remand Results at 12. The record shows that the government of Korea is not collecting fees that it is entitled to collect because of Hyundai Steel's arrangement with the government to operate the port, and the record does not demonstrate that the main purpose of building the port was for public good or any governmental functions. *Id.* Rather, though Hyundai Steel may have paid to construct the port, it also uses the port for its own operations. Remand Results at 12; *see* IDM at 30-31 (P.R. 301); *see also* Final Calculation Memo at 2-3 (P.R. 302; C.R. 323); *see also* Hyundai Steel's New Subsidy Allegation Questionnaire Response, dated Aug. 23, 2019 (Hyundai Steel NSA QR) at Exhibit NSA-1 at Article 39 (P.R. 208-209; C.R. 275-276); *see also* Hyundai Steel NSA QR at 2 (stating that "no other party has used the harbor to date")). As in *AK Steel*, the record of this proceeding shows that Hyundai Steel has the right to operate and freely use the port for many years, with no other party using the harbor to date. Remand Results at 12 (citing Hyundai Steel NSA QR at 2).

As in *AK Steel*, the government of Korea provided a countervailable benefit to Hyundai Steel for construction of the port by foregoing fees it was otherwise entitled to receive. Therefore, consistent with Commerce's analysis and conclusion as upheld by the Federal Circuit in *AK Steel*, Commerce determined that that non-payment of port usage fees constitutes a countervailable benefit. Remand Results at 13-14. Commerce's determination is consistent with law and supported by substantial evidence.

CONCLUSION

For these reasons, we respectfully request that this Court sustain Commerce's remand results and enter final judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. MCCARTHY
Director

s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

| | |
|---|---|
| OF COUNSEL: | s/ Kelly Krystyniak |
| HENDRICKS VALENZUELA | KELLY KRYSTYNIAK |
| Attorney | Trial Attorney |
| U.S. Department of Commerce | U.S. Department of Justice |
| Office of the Chief Counsel for Trade | Civil Division |
|     Enforcement and Compliance | Commercial Litigation Branch |
| 1401 Constitution Avenue, NW | P.O. Box 480 |
| Washington, D.C. 20230 | Ben Franklin Station |
| Tel: (240) 449-5852 | Washington D.C. 20044 |
| Email: hendricks.valenzuela@trade.gov | Tel: (202) 307-0163 |
| | Fax: (202) 305-7644 |
| | Email: Kelly.A.Krystyniak@usdoj.gov |
| | |
| January 12, 2022 | Attorneys for Defendant |

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that defendant's motion in this matter complies with the Court's type-volume limitation rules. According to the word count calculated by the word processing system with which the motion was prepared, the public version of the brief contains a total of 4,075 words.

s/ Kelly A. Krystyniak

January 12, 2022