IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HYUNDAI STEEL COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>        Defendant,<br><br>and<br><br>NUCOR CORPORATION and UNITED STATES STEEL CORPORATION,<br><br>        Defendant-Intervenors. | Before: Hon. Jennifer Choe-Groves, Judge<br><br>Court No. 20-03799 |

**DEFENDANT-INTERVENOR NUCOR'S SUPPORT OF
FINAL RESULTS OF REDETERMINATION PURSUANT
TO COURT REMAND**

 

**Alan H. Price, Esq.**
**Christopher B. Weld, Esq.**
**Theodore P. Brackemyre, Esq.**

WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
(202) 719-7000

*Counsel to Nucor Corporation*

**Dated: January 12, 2022**

# TABLE OF AUTHORITIES

                                        **Page(s)**

**Cases**

*Aetna Life Ins. Co. v. Haworth*,
    300 U.S. 227 (1937)................................................................................................3, 4

*Allen v. Wright*,
    468 U.S. 737 (1984)....................................................................................................3

*Cambridge Lee Indus. Inc. v. United States*,
    916 F.2d 1578 (Fed. Cir. 1990)..................................................................................4

*Elkem Metals Co. v. United States*,
    27 CIT 1758, 297 F. Supp. 2d 1347 (2003) ...........................................................5, 6

*Elkem Metals Co. v. United States*,
    468 F.3d 795 (Fed. Cir. 2006).....................................................................................6

*Gerdau Ameristeel Corp. v. United States*,
    519 F.3d 1336 (Fed. Cir. 2008)..................................................................................3

*Hylsa, S.A., de C.V. v. United States*,
    31 CIT 52, 469 F. Supp. 2d 1341 (2007) ...................................................................7

*Hyundai Steel Co. v. United States*,
    No. 20-03799, slip op. 21-112 (Ct. Int'l Trade Aug. 27, 2021).......................8, 9, 10

*Myonic GmbH v. United States*,
    35 CIT 1710 (2011) ...................................................................................................8

*NEC Corp. v. United States*,
    151 F.3d 1361 (Fed. Cir. 1998)..............................................................................2, 4

*Nucor Corp. v. United States*,
    32 CIT 1380, 594 F. Supp. 2d 1320 (2008) ...............................................................8

*Powell v. McCormack*,
    395 U.S. 486 (1969)................................................................................................3, 4

*Saha Thai Steel Pipe Pub. Co. v. United States*,
    538 F. Supp. 3d 1350 (Ct. Int'l Trade 2021) ..............................................................7

*Torrington Co. v. United States*,
    44 F.3d 1572 (Fed. Cir. 1995)................................................................................4, 5


*Vander Jagt v. O'Neill*,
  699 F.2d 1166 (D.C. Cir. 1983)..................................................................................3

*Weinstein v. Bradford*,
  423 U.S. 147 (1975)....................................................................................................4

**Administrative Materials**

*Certain Hot-Rolled Steel Flat Products From the Republic of Korea*,
  85 Fed. Reg. 64,122 (Dep't Commerce Oct. 9, 2020)...............................................9

**Other Authorities**

U.S. Const. Art. III, § 2....................................................................................................3

Ct. No. 20-03799

On behalf of Defendant-Intervenor Nucor Corporation ("Nucor"), we respectfully submit the following comments in support of aspects of the October 20, 2021 remand determination issued by the U.S. Department of Commerce ("Commerce"). Final Results of Redetermination Pursuant to Ct. Remand (Oct. 20, 2021), ECF No. 38 ("Remand Determination"). For the reasons set forth in the comments filed by Nucor on December 8, 2021 in opposition to Commerce's Remand Determination, Nucor respectfully disagrees with the agency's use of neutral facts available ("FA") with regard to the Port Usage Rights at North Incheon Harbor program. Def.-Int. Opp'n to Final Results of Redetermination Pursuant to Ct. Remand (Dec. 8, 2021), ECF No. 41 at 1-3. However, should this Court sustain Commerce's application of FA and corresponding recalculation of the subsidy rate for the North Incheon Harbor program, Nucor urges the Court not to entertain the additional arguments raised by Plaintiff Hyundai Steel Company ("Hyundai Steel") regarding mootness and the countervailability of the North Incheon Harbor program. Pl. Cmts. on Final Redetermination Pursuant to Ct. Remand (Dec. 8, 2021), ECF No. 40 at 2-12 ("Hyundai Steel Opp'n Remand Cmts.").

Outside of the arguments raised in Nucor's December 8, 2021 comments, there is no basis for the Court to find that Commerce's Remand Determination, which calculates a below *de minimis* subsidy rate for Hyundai Steel, is unsupported by substantial evidence or not otherwise in accordance with law. In calculating a below *de minimis* rate, Commerce found arguments related to the countervailability of the Port Usage Rights at North Incheon Harbor program to be "moot," reasoning that "no legally measurable subsidy exists" and, thus, "the end result of our conclusion on remand is essentially the same, *albeit* based on a different legal finding." Remand Determination at 11. Commerce further stressed that it "disagree{d} with Hyundai Steel that the provision of port usage rights at the Port of Incheon program provides no countervailable benefit

to Hyundai Steel." *Id.* As detailed below, Commerce's decision not to reconsider the countervailability of the North Incheon Harbor program in its Remand Determination is consistent with the mootness standard and the Court's remand order, and it also promotes an efficient use of all parties' resources.

Nevertheless, in its December 8, 2021 comments, Hyundai Steel argues that this Court should issue an additional remand order, asking Commerce to reconsider the countervailability of the Port Usage Rights at North Incheon Harbor program. Hyundai Steel Opp'n Remand Cmts. at 2-5. Hyundai Steel makes this contention even though Commerce's countervailability finding would have zero impact on the duty rate at which subject entries will be liquidated or the cash deposit rate at which duties will be collected. That is, even if Commerce were to find the North Incheon Harbor program to no longer be countervailable, the rate at which Hyundai Steel's entries would be liquidated or cash deposits would be collected would not change. In fact, due to Commerce's below *de minimis* finding on remand, the liquidation rate will be <u>zero percent</u>. *See* Remand Determination at 11. Accordingly, there is no live dispute for this Court to entertain and, thus, as Commerce correctly determined, the issue of the countervailability of this program is moot and need not be considered.[1]

The principle of mootness requires federal courts to only entertain matters in which there is an ongoing justiciable issue. *See NEC Corp. v. United States*, 151 F.3d 1361, 1369 (Fed. Cir. 1998) ("If a case becomes moot it no longer presents a justiciable controversy over which a federal

---

[1] Should the Court agree with Nucor's arguments and not sustain Commerce's Remand Determination—and, instead, instruct the agency to re-apply FA in calculating benefit—then Hyundai Steel's arguments concerning the countervailability of the Port Usage Rights at North Incheon Harbor program may be considered. However, these arguments should only be entertained in the event that Commerce calculates an above *de minimis* subsidy duty rate in a subsequent remand proceeding.

Ct. No. 20-03799

court may exercise jurisdiction."). The mootness doctrine originates from the "case or controversy" requirement of Article III of the United States Constitution. U.S. Const. Art. III, § 2 ("The judicial Power shall extend to all Cases . . . {and} to controversies . . . ."). Accordingly, courts will dismiss moot cases for a lack of subject matter jurisdiction. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937) (noting that jurisdiction requires a case or controversy, which is distinct from "a difference or dispute . . . that is academic or moot."). Indeed, the U.S. Supreme Court has opined that the mootness doctrine is at the core of "'the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984) (quoting *Vander Jagt v. O'Neill*, 699 F.2d 1166, 1178-79 (D.C. Cir. 1983) (Bork, J. concurring)). Thus, a case becomes moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). And, as the U.S. Court of Appeals for the Federal Circuit ("CAFC") has found, "an actual controversy must remain at all stages, not merely at the time the complaint is filed." *Gerdau Ameristeel Corp. v. United States*, 519 F.3d 1336, 1340 (Fed. Cir. 2008).

Hyundai Steel argues in its December 8, 2021 comments that the issue of the countervailability of the Port Usage Rights at North Incheon Harbor program is not moot because Commerce's countervailability determination "has a direct impact on this case, as well as other past and future cases." Hyundai Steel Opp'n Remand Cmts. at 2. However, Commerce's countervailability finding as to the North Incheon Harbor program has zero effect on the countervailing duty rate calculated in this proceeding. On remand, Commerce calculated a *de minimis* subsidy rate and, therefore, if the Remand Determination is sustained by the Court, Hyundai Steel's subject entries for this period will be liquidated at a zero percent rate. *See* Remand

Determination at 11. Similarly, there will be no impact on the cash deposit rates for Hyundai Steel's entries going forward. Thus, there is no "live" controversy or "legally cognizable interest" for this Court to consider. *See Powell*, 395 U.S. at 496; *NEC Corp.*, 151 F.3d at 1369. Rather, the issue of countervailability here is the type of "academic" question that courts consider moot. *See Aetna Life Ins. Co.*, 300 U.S. at 240-41. Simply put, this is the very definition of a moot issue.

Hyundai Steel also incorrectly claims that the "capable of repetition, yet evading review" exception to the mootness doctrine applies in this case. Hyundai Steel Opp'n Remand Cmts. at 3. This exception requires that two conditions are met. First, it must be shown that the "'challenged action {is} in its duration too short to be fully litigated prior to its cessation or expiration.'" *Cambridge Lee Indus. Inc. v. United States*, 916 F.2d 1578, 1581 (Fed. Cir. 1990) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). Second, there must be a "'reasonable likelihood' that the party 'will again suffer the . . . {injury} that gave rise to the suit.'" *Id.* Yet, this exception is not applicable in this context and the cases cited by Hyundai Steel are inapposite. *See* Hyundai Steel Opp'n Remand Cmts. at 3.

For instance, Hyundai Steel's analogy to the CAFC's decision in *Torrington Co. v. United States*, 44 F.3d 1572 (Fed. Cir. 1995) is entirely misplaced. Hyundai Steel claims that under *Torrington* the "capable of repetition, yet evading review" exception applies in cases where issues arising in one administrative review "may have necessary implications for subsequent reviews." Hyundai Steel Opp'n Remand Cmts. at 3. Thus, Hyundai Steel argues that, since the countervailability of the Port Usage Rights at North Incheon Harbor program may have legal consequences in subsequent administrative reviews, the issue is not moot in this proceeding. *See id.* However, the reasoning of the CAFC in *Torrington* is not applicable here. The issue ultimately found to be justiciable in *Torrington* concerned Commerce's methodology for calculating cash

deposit rates. *Torrington*, 44 F.3d at 1577-79. The CAFC found "the issue is ripe for adjudication" because challenges to Commerce's cash deposit rate methodology would be unlikely to ever reach final disposition by the time a new cash deposit rate was established following the next annual administrative review, thereby allowing Commerce's cash deposit rate methodology to perpetually escape judicial review. *See id.* In this regard, the calculation of cash deposit rates is a necessarily forward-looking action and therefore particularly susceptible to the "evading review" concerns contemplated by courts in the context of proceedings with annual administrative reviews. *See id.* at 1577.

The same concerns are not present in cases such as the current, where resolution of the legal question at issue would have zero impact on the calculation of the liquidation or cash deposit rate for subject entries. Hyundai Steel mistakenly interprets *Torrington* to expand the "capable of repetition, yet evading review" exception to all issues that could have "legal consequences" spanning across multiple administrative reviews. *See* Hyundai Steel Opp'n Remand Cmts. at 3. *Torrington* does not apply so broadly. The rationale of the CAFC in *Torrington* with respect to mootness is limited to the context of reviewing Commerce's cash deposit rate methodologies, which would necessarily escape judicial review absent the application of this mootness exception. *See Torrington*, 44 F.3d at 1577-79. The countervailability issue at question in this appeal is clearly different. There is no bar to Hyundai Steel challenging the same issue in an appeal of a subsequent review. Indeed, Hyundai Steel has appealed the subsequent review of this order, challenging this very issue, and briefing is schedule to start within the next two months.

Furthermore, Hyundai Steel's reference to this Court's decision in *Elkem Metals Co. v. United States*, 27 CIT 1758, 297 F. Supp. 2d 1347 (2003) is equally erroneous. As Hyundai Steel notes, Hyundai Steel Opp'n Remand Cmts. at 3, this Court in *Elkem Metals* found that Commerce

cannot deem an issue moot and, in doing so, "avoid responding to plaintiffs' arguments on the merits" that could affect the duty rate calculated in an antidumping or countervailing duty proceeding. *See Elkem Metals*, 27 CIT at 1762, 297 F. Supp. 2d at 1351. At issue in *Elkem Metals* was Commerce's calculation of constructed value ("CV") using certain value-added tax ("VAT") input costs. *Elkem Metals Co. v. United States*, 468 F.3d 795, 799-800 (Fed. Cir. 2006). In the initial appeal, this Court rejected the government's attempt to consider this issue moot, when Commerce failed to consider plaintiffs' arguments that could result in an above *de minimis* antidumping duty margin. *See Elkem Metals*, 27 CIT at 1762, 297 F. Supp. 2d at 1351.

However, that is not analogous to what Commerce has done in this proceeding, and it is misleading for Hyundai Steel to suggest otherwise. Here, Commerce has not avoided any arguments that—even if decided in Hyundai Steel's favor—would have any impact on the countervailing duty rate. *See* Remand Determination at 11. In fact, the ultimate outcome of the *Elkem Metals* litigation, which Hyundai Steel fails to mention, illustrates this point. There, after this Court rejected the United States' attempt to dismiss the appeal as moot, the government was granted a remand to recalculate the respondent's dumping margin with the correct VAT information. *Elkem Metals*, 468 F.3d at 799. After subsequent remand proceedings addressing the VAT calculation issue, Commerce continued to calculate a below *de minimis* antidumping duty rate. *Id.* at 799-800. The CAFC ultimately dismissed the appeal as moot, after determining that Commerce appropriately found that VAT may be excluded from the CV calculations, thereby rendering the initial question of whether VAT was properly encapsulated in CV as irrelevant. *Id.* at 803.

Taken together, it is clear that these cases do not support Hyundai Steel's claim that countervailability of the Port Usage Rights at North Incheon Harbor program is not a moot issue.

Hyundai Steel's misconstrues the reasoning of these cases and misapplies them to the present action. *See* Hyundai Steel Opp'n Remand Cmts. at 3. Indeed, if one considers the Court's approach to mootness in similar contexts, it becomes clear that the countervailability of this program is a moot issue that does not warrant further consideration. For example, it is the Court's well-established practice to consider issues moot if there are no unliquidated entries that would be affected and the cash deposit rate for future entries would not change. *See Hylsa, S.A., de C.V. v. United States*, 31 CIT 52, 53-54, 469 F. Supp. 2d 1341, 1343 (2007). The same logic applies here. If the rate at which entries are liquidated or cash deposits are collected would not change, and there is no other recognizable legal interest, then there is not a live issue for the Court to consider and it should be deemed moot.

Likewise, in a recent appeal concerning Commerce's application of a particular market situation ("PMS") adjustment, the Court treated arguments concerning the agency's finding of a PMS to exist in a market to be moot on the basis that Commerce's application of a PMS adjustment on remand had no effect on the antidumping duty margin. *Saha Thai Steel Pipe Pub. Co. v. United States*, 538 F. Supp. 3d 1350, 1353-54 (Ct. Int'l Trade 2021). That is, the Court chose not to consider Commerce's continued finding of a PMS to exist, having already determined that it would have no impact on the dumping rates calculated. *Id.* An analogous fact pattern exists here, as the question of whether a program is countervailable is irrelevant if the ultimate answer could have no impact on the applied countervailing duty rate.

Moreover, in arguing that Commerce has countervailed the Port Usage Rights at North Incheon Harbor program in subsequent administrative reviews, both in this proceeding and reviews of other countervailing duty orders, Hyundai Steel misconstrues the precedential effect of the Court reaching the issue of countervailability in this action. Hyundai Steel Opp'n Remand Cmts.

7

at 4-5. Each segment of each Commerce proceeding entails its own record, and a holding by this Court in one proceeding is not binding on a similar issue in a separate proceeding. *See Nucor Corp. v. United States*, 32 CIT 1380, 1446 n.47, 594 F. Supp. 2d 1320, 1381 n.47 (2008) ("Whenever this Court considers the holding and reasoning of a previous opinion rendered by a different Judge of the CIT, it regards such opinions as persuasive, of course, but not binding precedent."); *Myonic GmbH v. United States*, 35 CIT 1710, 1712 (2011) ("{A}ny decision of the Court of International Trade judge assigned would be afforded due regard, but would not bind the decision of this Court.").

Therefore, even if the Court were to reach the issue of countervailability, there would be no binding precedent requiring Commerce to find similarly in subsequent reviews of the same and other countervailing duty orders. This is especially so given the different factual administrative records in each proceeding. Thus, while Commerce may point to its countervailability finding in the underlying administrative review to support similar determinations in other cases, contrary to Hyundai Steel's arguments, *see* Hyundai Steel Opp'n Remand Cmts. at 4, those separate findings are fully supported by their own administrative records, and, even if the Court were to find the program not to be countervailable for this period, Commerce would not be bound by that determination in separate and subsequent proceedings.

Additionally, Commerce's Remand Determination follows the Court's narrow remand instructions in that the agency has reconsidered its application of FA and the countervailing duty rate assigned to Hyundai Steel. *See* Remand Determination at 4-14; *Hyundai Steel Co. v. United States*, No. 20-03799, slip op. 21-112 at 6-7 (Ct. Int'l Trade Aug. 27, 2021) ("Opinion & Remand Order"). Commerce was not instructed by the Court to reconsider separately the countervailability of the Port Usage Rights at North Incheon Harbor program. Opinion & Remand Order at 6-7. The

Court noted in its Opinion that the agency's determination as to the application of FA "may affect Commerce's determination that the port usage rights constitute a countervailable benefit," but it did not instruct Commerce to consider the other elements of countervailability as a distinct analysis. *Id.* at 6. Indeed, consistent with the Court's desire to preserve resources, *id.*, Commerce acted appropriately by not addressing issues that would have zero impact on the ultimate countervailing duty rate applicable in this proceeding. In this regard, the Court should sustain Commerce's decision not to address issues related to countervailability and issue no additional remand order.

As a final matter, even if the Court were to consider Hyundai Steel's arguments concerning the countervailability of the Port Usage Rights at North Incheon Harbor program, the underlying administrative record fully supports Commerce's determination that the provision of these port usage rights by the Government of the Republic of Korea ("GOK") constitutes a countervailable subsidy. Issues and Decision Memorandum accompanying *Certain Hot-Rolled Steel Flat Products From the Republic of Korea*, 85 Fed. Reg. 64,122 (Dep't Commerce Oct. 9, 2020) (final results of countervailing duty admin. rev., 2017), P.R. 301 at 29-32 ("Final I&D Memo"). Indeed, as Hyundai Steel recognizes in its December 8, 2021 comments, *see* Hyundai Steel Opp'n Remand Cmts. at 2, the arguments provided by Commerce in its Remand Determination concerning the countervailability of the North Incheon Harbor program merely supplement the thorough rationale already provided by the agency in its final results, Final I&D Memo at 29-32. As Commerce has summarized, "{t}he essence of this program is that the GOK helped Hyundai Steel build a port for its own use for a very long time," and the GOK provided this benefit "through reimbursements as well as foregoing revenue that the GOK was entitled to collect." *Id.* at 30-31. Taken together, Commerce's reasoning in its Remand Determination and the final determination of the underlying

administrative review fully support finding that this program confers a countervailable benefit. Accordingly, Commerce's countervailability finding is in accordance with law, based on substantial evidence, and not an abuse of the agency's discretion.

If the Court sustains Commerce's application of FA in its Remand Determination but wishes to consider arguments regarding the countervailability of the Port Usage Rights at North Incheon Harbor program, it is critical that the Court not limit itself to only the arguments presented by Hyundai Steel in this proceeding. Given that the briefing scheduled in this action was vacated and a voluntary remand was granted before the deadline for Defendant or Defendant-Intervenors to file response briefs, at a minimum, the Court should re-establish a briefing schedule for parties to submit arguments regarding the countervailability of this program. Opinion & Remand Order at 7. The Court would deprive itself of the best available information and argument if it were to limit itself to only the arguments made by Hyundai Steel and doing so would significantly prejudice other parties, such as Defendant-Intervenor Nucor.

In sum, Nucor asks the Court to not sustain Commerce's Remand Determination and, instead, the Court should instruct the agency to re-apply FA in calculating the benefit received by Hyundai Steel under the Port Usage Rights at North Incheon Harbor program. However, should the Court uphold Commerce's application of FA on remand, the Court should sustain the agency's entire Remand Determination and not issue an additional remand order to address countervailability, as requested by Hyundai Steel. Commerce appropriately chose not to fully address Hyundai Steel's arguments regarding countervailability, finding them to be moot. As detailed above, there is no live controversy for this Court to consider, Hyundai Steel's mootness claims are misplaced, and the cases referenced in their comments are easily distinguished. Accordingly, the issue of countervailability of the North Incheon Harbor program is moot, and

there is no basis for the Court to instruct Commerce to reconsider its prior determination. Even so, Commerce's countervailability finding is fully supported by the underlying administrative record and, if the Court wishes to entertain this issue, it should establish a separate briefing schedule before issuing any additional remand order.

    Respectfully submitted,

    */s/ Christopher B. Weld*
    Alan H. Price, Esq.
    Christopher B. Weld, Esq.
    Theodore P. Brackemyre, Esq.

    **WILEY REIN LLP**
    2050 M Street NW
    Washington, DC 20036
    (202) 719-7000

    *Counsel to Nucor Corporation*

Dated: January 12, 2022

# CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(l), the undersigned certifies that these comments comply with the word limitation requirement. The word count for Support of Final Results of Redetermination Pursuant to Court Remand, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 3,400 words. In accordance with Chamber Procedure 2(B)(1)(b), this submission, taken together with Nucor's December 8, 2021 Opposition to Final Results of Redetermination Pursuant to Court Remand, does not exceed the 10,000 word limit.

*/s/ Christopher B. Weld*
(Signature of Attorney)

Christopher B. Weld
(Name of Attorney)

Nucor Corporation
(Representative Of)

January 12, 2022
(Date)